567 S.E.2d 557

**Arthur C. KRIEGER, II**

**v.**

**COMMONWEALTH of Virginia.**

**Record No. 0408–00–2.**

Court of Appeals of Virginia,
Richmond.

Aug. 13, 2002.

570

572

Mary K. Martin, Petersburg, (Eliades & Eliades, on briefs), for appellant.

Louis A. Rosenstock, III, Special Assistant City Attorney, for appellee.

Present: FITZPATRICK, C.J., and BENTON, WILLIS, ELDER, BRAY, ANNUNZIATA, BUMGARDNER, FRANK, HUMPHREYS, CLEMENTS and AGEE, JJ.

HUMPHREYS, Judge.

By order dated January 9, 2002, this Court, on its own motion and pursuant to Code § 17.1–402(D), granted a hearing *en banc* to consider the motion of Arthur C. Krieger, II, requesting counsel and transcripts on appeal at the expense of the Commonwealth. Upon hearing said motion *en banc,* we hereby deny Krieger's motion for the reasons set forth below.

## I. *Background*

The relevant procedural history in this matter is uncontroverted. On November 17, 1999, Krieger appeared before the Circuit Court of the City of Petersburg on a hearing to show cause, related to a charge of maintaining a public nuisance. The trial court found Krieger in civil contempt for disobedience of its orders to abate a nuisance and sentenced him to ten days in jail, all of which were suspended on the condition he comply with the terms and conditions of prior orders entered by the court within ninety days.

On February 10, 2000, Krieger appeared *pro se* before the court for a hearing to review his compliance with the court's November 17, 1999 ruling. Although the trial court found that Krieger was indigent, his request for court-appointed counsel was denied. The Commonwealth then presented evidence that Krieger had failed to comply with the conditions of the November 17, 1999 ruling. Krieger was ultimately found to be in contempt and was remanded into custody to serve the ten-day jail sentence. However, the final order entered by the court provided that Krieger would be entitled to immediate release upon his "demonstrated unconditional willingness to comply with the court's prior order."

On February 22, 2000, Krieger filed *pro se* a notice of appeal of the February 10, 2000 ruling. He requested court-appointed counsel on appeal and transcripts of the proceedings below, at the Commonwealth's expense. The trial court denied both requests. We granted a hearing *en banc* solely on the issues of whether he is entitled to court-appointed counsel on appeal, as well as transcripts of the lower court proceedings at the expense of the Commonwealth.[1]

## II. *Analysis*

The question of whether an indigent defendant, found guilty of civil contempt of court and sentenced to jail, is entitled to court-appointed counsel on appeal is one of first impression in Virginia.

As a threshold matter, it is axiomatic that the Sixth Amendment provides certain safeguards in "all criminal prosecutions." U.S. Const. amend. VI. Further, the Fourteenth Amendment mandates that: "[n]o state shall ... deprive any person of ... liberty ... without due process of law...." U.S. Const. amend. XIV. Thus, the Supreme Court of the United States has held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was repre-

---

1. Krieger's appellate counsel represented him *pro bono* on appeal to address only these issues.

sented by counsel at his trial." *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972).

 However, there is no constitutional or statutory right for an indigent to have counsel appointed for trial in a civil case. *See Watson v. Moss*, 619 F.2d 775, 776 (8th Cir.1980); *Darnell v. Peyton*, 208 Va. 675, 677, 160 S.E.2d 749, 750 (1968) ("Code § 14.1–183 (Repl.Vol.1964) [ (now Code § 17.1–606) ], which provides that in a civil action an indigent 'shall have, from any counsel whom the court may assign him, ... all needful services ..., without any fees ...' does not specifically require the appointment of such counsel").[2] *See also Wolfolk v. Rivera*, 729 F.2d 1114, 1119–20 (7th Cir.1984); *Castner v. Colorado Springs Cablevision*, 979 F.2d 1417, 1420 (10th Cir.1992); *cf. Plumer v. Maryland*, 915 F.2d 927, 931–32 (4th Cir.1990) (noting "the well-established principle that the right to counsel applies only to criminal or quasi-criminal proceedings and does not extend to administrative license revocation proceedings"); *Ferguson v. Gathright*, 485 F.2d 504, 506–07 (4th Cir.1973) (holding neither the Due Process Clause nor the Sixth Amendment requires the appointment of counsel in the civil adjudication of a loss of driving privileges), *cert. denied*, 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974). Nevertheless, in civil matters, the "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty," is weighed against other elements in the due process decision to determine, on a case-by-case basis, whether court-appointed counsel is warranted. *Lassiter v. Department of Social Services*, 452 U.S. 18, 26–27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). Such elements include the nature of the private interests at stake,

---

2. Code § 17.1–606 provides as follows:

Any person, who is a resident of this Commonwealth, and on account of his poverty is unable to pay fees or costs may be allowed by a court to sue or defend a suit therein, without paying fees or costs; whereupon he shall have, from any counsel whom the court may assign him, and from all officers, all needful services and process, without any fees, except what may be included in the costs recovered from the opposite party.

the government's interest, and the risk that the procedures used will lead to erroneous decisions. *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).[3]

Similarly, in the appellate context, the United States Supreme Court has held that "where the merits of *the one and only [criminal] appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." *Douglas v. California,* 372 U.S. 353, 357, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963); *see also Cabaniss v. Cunningham,* 206 Va. 330, 333, 143 S.E.2d 911, 913 (1965) ("the failure to appoint counsel to assist an indigent defendant in making an appeal from a conviction is a denial of equal protection and due process guaranteed to him under the Federal Constitution and the Virginia Bill of Rights"). However, in *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Supreme Court held that "neither the Due Process Clause nor the Equal Protection Clause requires a State to provide counsel at state expense to an indigent prisoner pursuing a discretionary appeal in the state system...." *M.L.B. v. S.L.J.,* 519 U.S. 102, 113, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996) (citing *Ross,* 417 U.S. at 610, 612, 616–18, 94 S.Ct. at 2443–44, 2446–47).[4]

From these cases it is clear that the right to appointed counsel on appeal derives not from some statutory grant, but from the Due Process and Equal Protection Clauses of the Fourteenth Amendment, as well as from the Sixth Amend-

---

**3.** The dissent devotes a significant portion of its analysis to the idea that the *Mathews* balancing test is inappropriately applied in cases such as the case at bar. However, the dissent's opinion in this regard is based upon the faulty premise that the proceeding at issue carries with it an absolute right to court-appointed counsel. *See Lassiter,* 452 U.S. at 26–27, 101 S.Ct. at 2159–60 ("We must balance [the *Mathews* ] elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom.").

**4.** Nevertheless, we recognize that the matter at issue concerns an appeal as of right, not a discretionary appeal.

ment in criminal cases. *See Cabaniss,* 206 Va. at 334, 143 S.E.2d at 914 (noting that " '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have assistance of counsel for his defense.' The right to defend includes the right of assistance in perfecting an appeal." (quoting *Gideon v. Wainwright,* 372 U.S. 335, 339, 83 S.Ct. 792, 794, 9 L.Ed.2d 799 (1963))). As the Supreme Court held in *Ross,* it is rudimentary that

> [a]t the trial stage of a criminal proceeding, the right of an indigent defendant to counsel is fundamental and binding upon the States by virtue of the Sixth and Fourteenth Amendments. But there are significant differences between the trial and appellate stages of a criminal proceeding.... The fact that an appeal *has* been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way. Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analysis.

*Ross,* 417 U.S. at 610–11, 94 S.Ct. at 2443–44. Thus,

> [e]qual protection requires the state to provide appointed counsel for appeal and a right of appeal at public expense in those classes of cases in which indigents are entitled to appointed counsel at the trial level and a right of appeal is provided. This principle was developed in criminal cases but it applies to other disputes involving matters of such a fundamental nature as to require appointment of counsel at the trial level, such as juvenile delinquency proceedings and proceedings concerning possible permanent deprivation of parental rights.... Where issues of a less fundamental nature are involved, the right to pursue remedies at public expense is considerably more limited.

*In re Lewis,* 88 Wash.2d 556, 564 P.2d 328, 329–30 (1977), *overruled on other grounds by Grove v. State,* 127 Wash.2d

221, 897 P.2d 1252 (1995) (citations omitted). *See also, In re Gault,* 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527 (1967); *Lassiter,* 452 U.S. at 32–33, 101 S.Ct. at 2162–63.

■ The United States Supreme Court has specifically declined to discourage those States that have, as a matter of legislative choice, made counsel available to litigants at all stages of judicial review. *See Ross,* 417 U.S. at 618, 94 S.Ct. at 2447–48. Nevertheless, our General Assembly has created no such statutory right, outside of the criminal context. *See Tyler v. Garrison,* 120 Va. 697, 697, 91 S.E. 749, 749 (1917) ("This day came again the parties, by counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid and argument of counsel, is of opinion that section 3538 of the Code of Virginia [ (now Code § 17.1–606) ] does not apply to appellate proceedings."). *See also Dodson v. Director, Dept. of Corrections,* 233 Va. 303, 309, 355 S.E.2d 573, 577 (1987) (holding that Code § 19.2–157 provides an indigent person charged with the commission of a crime punishable by death or imprisonment is entitled to counsel throughout the appellate process). Accordingly, we must consider the nature of the case below, as well as the nature of the appeal and the apparent due process and equal protection concerns, in order to determine whether denial of Krieger's motion for court-appointed counsel on appeal would effectively "bolt the door to equal justice." *M.L.B.,* 519 U.S. at 110, 117 S.Ct. at 560.

■ We first note that the "labels affixed to the [contempt] proceeding or the relief imposed under state law ... are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law." *Hicks v. Feiock,* 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988). Thus, the fact that the trial court in this instance labeled Krieger's contempt proceeding as "civil" is of no moment, and we must first make a threshold determination concerning the nature of the proceeding in order to further

consider whether Krieger is entitled to court-appointed counsel on appeal.[5]

The question of how a court determines whether to classify the relief imposed in a given proceeding as civil or criminal in nature, for the purposes of applying the Due Process Clause and other provisions of the Constitution, is one of long standing, and its principles have been settled at least in their broad outlines for many decades.

*Id.*

[T]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id.* at 442, 31 S.Ct. at 498.

\* \* \* \* \* \*

"The distinction between refusing to do an act commanded,—remedied by imprisonment until the party performs the required act; and doing an act forbidden,—punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment." *Gompers,* 221 U.S. at 443, 31 S.Ct. at 499. In the former instance, the

---

5. Thus, contrary to the suggestion made by the dissent, we most certainly recognize that "the ... label of the proceeding does not dispose of the question before us." Indeed, the very nature of the proceeding and the resulting relief must be discerned–especially in cases of contempt, where the line between civil and criminal penalties has become increasingly blurred–in order to determine the proper applicability of federal constitutional protections. *See Hicks,* 485 U.S. at 630–31, 108 S.Ct. at 1428–29.

conditional nature of the punishment renders the relief civil in nature because the contemnor "can end the sentence and discharge himself at any moment by doing what he had previously refused to do." *Id.*[ ] at 442, 31 S.Ct. at 498. In the latter instance, the unconditional nature of the punishment renders the relief criminal in nature because the relief "cannot undue or remedy what has been done nor afford any compensation" and the contemnor "cannot shorten the term by promising not to repeat the offense." [*Id.*]

\* \* \* \* \* \*

Any sentence "must be viewed as remedial," and hence civil in nature, "if the court conditions release upon the contemnor's willingness to [comply with the order]." *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). By the same token, in a civil proceeding the court "may also impose a determinate sentence *which includes a purge clause.*" *Id.*[ ] at 370, n. 6, 86 S.Ct. at 1536 n. 6 (emphasis added). "On the contrary, a criminal contempt proceeding would be characterized by the imposition of an unconditional sentence for punishment or deterrence." *Id.*[ ] at 370, n. 5, 86 S.Ct. at 1535 n. 5.

*Id.* at 634–35, 108 S.Ct. at 1431.

 "The civil contemnor thus[,] ' "carries the keys of his prison in his own pocket[.]" ' At any moment, '[h]e can end the sentence and discharge himself ... by doing what he had previously refused to do.' " *International Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 844, 114 S.Ct. 2552, 2566, 129 L.Ed.2d 642 (1994) (Rehnquist, C.J., and Ginsburg, J., concurring in part and concurring in judgment) (quoting *Gompers*, 221 U.S. at 442, 31 S.Ct. at 498 (quoting *In re Nevitt*, 117 F. 448, 451 (8th Cir.1902))). In addition, "the fact that a contemnor has his sentence suspended and is placed on probation cannot be decisive in defining the civil or criminal nature of the relief, for many convicted criminals are treated in exactly this manner for the purpose (among others) of influencing their behavior." *Hicks*, 485 U.S. at 637, 108 S.Ct. at 1432. However, "[a] suspended sentence with a term of

[determinate] probation is not equivalent to a conditional sentence that would allow the contemnor to avoid or purge these sanctions." *Id.* at 639 n. 11, 108 S.Ct. at 1434 n. 11.

Accordingly, although the relief imposed here was a determinate sentence, the court included a purge clause that would free Krieger from any further obligation to the court.[6] Thus, Krieger "carried the keys" of his own cell door in his pocket. Therefore, the contempt proceeding and his resulting sentence were clearly civil in nature. *See id.* at 640, 108 S.Ct. at 1434; *Shillitani,* 384 U.S. at 370 n. 6, 86 S.Ct. at 1536 n. 6; *Gompers,* 221 U.S. at 442, 31 S.Ct. at 498.[7] Thus, on this

---

6. We do not address the situation of a contemnor who raises the defense of impossibility of performance with regard to the ability to purge the contempt.

7. The dissent recognizes the "label" of the proceeding at issue as civil, but contends that a "civil contemnor facing the potential of incarceration has a right to appointed counsel at trial that is absolute unless waived." This premise necessarily rejects the notion of *stare decisis.*

The United States Supreme Court has specifically held that "the fact that the outcome of a proceeding may result in loss of liberty does not by itself ... mean that the Sixth Amendment's guarantee of counsel is applicable." *Middendorf v. Henry,* 425 U.S. 25, 35, 96 S.Ct. 1281, 1287, 47 L.Ed.2d 556 (1976). Nevertheless, the dissent, relying chiefly upon the Court's decisions in *Argersinger* and *Lassiter,* opines that where any indigent litigant faces a potential threat of imprisonment, due process requires a *per se* right to appointed counsel. However, the dissent ignores relevant Supreme Court precedent.

In the recent decision of *Alabama v. Shelton,* —— U.S. ——, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002) (5–4 decision), a case involving an uncounseled criminal misdemeanant, convicted and placed on a suspended sentence with probation, the Supreme Court seemingly rejected its explicit holdings in *Argersinger* and *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), drawing "actual imprisonment" as the line defining the constitutional right to counsel, by holding that "a suspended sentence that may end up in the actual deprivation of a person[']s liberty may not be imposed unless the defendant was accorded the guiding hand of counsel...." —— U.S. at ——, 122 S.Ct. at 1767. However, the Court's decision in this regard did not reject its long-standing general rule that "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Lassiter,* 452 U.S. at 26, 101 S.Ct. at 2159.

Indeed, subsequent to *Argersinger, Scott, Lassiter,* and *In re Gault,* the Supreme Court decided *Hicks,* a decision not addressed by the Court in *Alabama v. Shelton* and ignored by the dissent, which importantly holds

that in cases of truly civil contempt, an indigent litigant, whether actually imprisoned or not, is not entitled to the "full panoply of due process safeguards" as the dissent suggests. *See Hicks*, 485 U.S. at 632, 638, 108 S.Ct. at 1429, 1433. In *Hicks*, the Supreme Court went to great lengths to explain the distinction between criminal and civil contempt, finding that the nature of the proceeding and resulting relief must be discerned in order to determine the proper application of federal constitutional protections. The Court emphasized that "[t]he critical feature that determines whether the remedy is civil or criminal in nature is not when or whether the contemnor is physically required to set foot in jail[,] but whether the contemnor can avoid the sentence imposed [upon] him, or purge himself of it, by complying with the terms of the original order." *Id.* at 635 n. 7, 108 S.Ct. at 1431 n. 7. If he can, the nature of the proceeding and the relief are civil in nature and the contemnor is not entitled to the same due process protections as a criminal defendant. *Id.* at 632, 638, 108 S.Ct. at 1429, 1433; *see also Shillitani*, 384 U.S. at 370, 86 S.Ct. at 1535 (holding "[t]he conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury, *Uphaus v. Wyman*, 364 U.S. 388, 403–404, 81 S.Ct. 153, 155, 5 L.Ed.2d 148 (1960) (Douglas, J., dissenting), provided that the usual due process requirements are met").

Moreover, the Court in *Hicks*, true to its subsequent decision in *Alabama v. Shelton*, specifically held that in cases of contempt where a contemnor is given a determinate suspended sentence and placed on probation, the remedy would be considered criminal in nature, and not civil. *Hicks*, 485 U.S. at 639 n. 11, 108 S.Ct. at 1434 n. 11. The Court reasoned that:

a suspended sentence, without more, remains a determinate sentence, and a fixed term of probation is itself a punishment that is criminal in nature. A suspended sentence with a term of probation is not equivalent to a conditional sentence that would allow the contemnor to avoid or purge these sanctions. A determinate term of probation puts the contemnor under numerous disabilities that he cannot escape by complying with the dictates of the prior orders, such as . . . the term of probation may be revoked and the original sentence (including incarceration) may be reimposed at any time for a variety of reasons without all the safeguards that are ordinarily afforded in criminal proceedings.

*Id.*

Accordingly, to accept the dissent's rationale would be to render meaningless the careful distinctions made in the Supreme Court's opinion in *Hicks*. The dissent suggests that, whether an indigent litigant was sentenced to incarceration, which could be purged, or whether he was sentenced to a fixed term of incarceration, is a distinction without a difference. In both instances, the litigant would be constitutionally entitled to court-appointed counsel. This *per se* approach has been considered by the Court and expressly rejected as required by the Constitution. *Id. See also Gagnon v. Scarpelli*, 411 U.S. 778, 787, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973) ("While . . . a [*per se*] rule has the appeal of simplicity, it would impose direct costs and

record, in considering the interests at stake of the parties and in applying the *Mathews* balancing test, we find neither an interest of a fundamental nature, nor a proceeding so complex as to implicate equal protection or due process concerns which would entitle Krieger to court-appointed counsel to pursue his appeal of the civil contempt order. *See Mathews,* 424 U.S. at 335, 96 S.Ct. at 902. Indeed,

> [t]he Fourteenth Amendment "does not require absolute equality or precisely equal advantages," *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973), nor does it require the State to "equalize economic conditions." *Griffin v. Illinois,* 351 U.S. [12, 23, 76 S.Ct. 585, 592, 100 L.Ed. 891 (1956) ] (Frankfurter, J., concurring).... [However,] [t]he State cannot adopt procedures which leave an indigent defendant "entirely cut off from any appeal at all," by virtue of his indigency, *Lane v. Brown,* 372 U.S. [477, 481, 83 S.Ct. 768, 771, 9 L.Ed.2d 892 (1963),] or extend to such indigent defendants merely a "meaningless ritual" while others in better economic circumstances have a "meaningful appeal." *Douglas,* [372 U.S.] at 358[, 83 S.Ct. at 817].

*Ross,* 417 U.S. at 612, 94 S.Ct. at 2445 (holding, in the criminal context, where a criminal defendant, who has been brought before the court at the instance of the State, is provided with counsel at trial and on appeals as of right, there is no constitutional requirement that he also be provided with coun-

---

serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel."). *Accord State ex rel. Payne v. Empire Life Ins. Co.,* 351 So.2d 538 (Ala.1977); *Andrews v. Walton,* 428 So.2d 663 (Fla.1983); *In re Marriage of Betts,* 200 Ill.App.3d 26, 146 Ill.Dec. 441, 558 N.E.2d 404 (1990); *State v. Walker,* 386 So.2d 908 (La.1980); *Meyer v. Meyer,* 414 A.2d 236 (Me.1980); *State ex rel. Shaw v. Provaznik,* 708 S.W.2d 337 (Mo.Ct.App.1986); *Duval v. Duval,* 114 N.H. 422, 322 A.2d 1 (1974); *State ex rel. Dep't of Human Servs. v. Rael,* 97 N.M. 640, 642 P.2d 1099 (1982); *Morgenthau v. Garcia,* 148 Misc.2d 900, 561 N.Y.S.2d 867 (N.Y.Sup.Ct.1990); *Rittel v. Rittel,* 335 Pa.Super. 550, 485 A.2d 30 (1984). Thus, lacking a constitutional imperative, whether to adopt a *per se* rule becomes a matter of policy that should be left to the legislature.

sel for further discretionary appeals). *See also Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972) ("When an appeal is afforded . . . it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause.").

We find no such concern here. The right to appeal in Virginia is equally available to all persons, as it was to Krieger in this case. Further, there is no invidious discrimination in the appellate procedure. *Cf. Rinaldi v. Yeager, Warden,* 384 U.S. 305, 310–11, 86 S.Ct. 1497, 1500–01, 16 L.Ed.2d 577 (1966). This is true irrespective of the fact that some potential appellants may be able to afford counsel while others, such as Krieger, may not. *See Aiello v. Commissioner of Public Welfare,* 358 Mass. 91, 260 N.E.2d 662, 663 (1970).

Thus, nothing in the record before us suggests that Krieger has been, or may be, denied equal access to a meaningful appeal. Therefore, as Krieger would be "denied no right secured by the Federal Constitution" if no court-appointed counsel is appointed to him for purposes of obtaining appellate review, we find that Krieger is not entitled to court-appointed counsel for purposes of his appeal of the civil contempt finding and resulting sentence.

In light of this holding, we also find that Krieger is not entitled to transcripts on appeal at the expense of the Commonwealth. *See M.L.B.,* 519 U.S. at 120–21, 117 S.Ct. at 566 (noting that the Court's decisions concerning access to judicial processes, including access to transcripts, reflect both equal protection and due process concerns invoking a necessary case-by-case analysis of the character and intensity of the individual interest at stake, on the one hand, and the State's justification for its exaction, on the other).

*Motion denied.*

ANNUNZIATA, J., with whom FITZPATRICK, C.J., BENTON, ELDER, and CLEMENTS, JJ., join, dissenting.

For the reasons that follow, I respectfully dissent from the majority's decision to deny Krieger court-appointed counsel on appeal and a free copy of any available transcripts.

*A. Indigent Litigant's Right to Court–Appointed Counsel*

To address the issue before us, we must first examine whether the law requires the appointment of counsel at the trial level, as it is the wellspring from which the right to counsel on appeal emanates. As the United States Supreme Court has made clear, "[a] State's obligation to provide appellate counsel to poor defendants faced with incarceration applies to appeals of right." *M.L.B. v. S.L.J.*, 519 U.S. 102, 113, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996); *accord Cabaniss v. Cunningham*, 206 Va. 330, 333, 143 S.E.2d 911, 913 (1965) ("[F]ailure to appoint counsel to assist an indigent defendant in making an appeal from a conviction is a denial of equal protection and due process guaranteed to him under the Federal Constitution and the Virginia Bill of Rights." (citations omitted)); *see also Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) ("There is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review."). Because an appeal from a civil contempt finding lies as a matter of right in Virginia, *see* Code § 19.2–318, if due process requires the Commonwealth to appoint counsel for Krieger at trial, then he is entitled to appointed counsel on appeal.

Therefore, I begin by examining the Due Process Clause of the Fourteenth Amendment of the United States Constitution in which the right to counsel at trial is rooted. It provides, in relevant part: "[n]o state shall ... deprive any person of ... liberty ... without due process of law...." U.S. Const. amend. XIV, § 1.

A citizen's interest in personal liberty is "the most fundamental interest protected by the Constitution of the United States." *McBride v. McBride*, 334 N.C. 124, 431 S.E.2d 14, 14 (1993); *see also Butts v. Commonwealth*, 145 Va. 800, 806, 133 S.E. 764, 766 (1926) (noting that personal liberty is a fundamental right). Consequently, when one's liberty is at stake, the need for the assistance of counsel is beyond question. *See Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32

L.Ed.2d 530 (1972) (holding that "no person may be imprisoned for any offense ... unless he was represented by counsel [because] 'the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation.' " (quoting *Baldwin v. New York*, 399 U.S. 66, 73, 90 S.Ct. 1886, 1890, 26 L.Ed.2d 437 (1970))). The basis for this requirement is well known:

> "Even the intelligent and educated layman has small and sometimes no skill in the science of law.... He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

*Gideon v. Wainwright*, 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963) (quoting *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)); *see also Scott v. Illinois*, 440 U.S. 367, 370, 99 S.Ct. 1158, 1160, 59 L.Ed.2d 383 (1978) ("[T]he guiding hand of counsel [is] so necessary where one's liberty is in jeopardy."); *Powell*, 287 U.S. at 68–69, 53 S.Ct. at 64 (holding that due process includes the right to the assistance of counsel for criminal defendants facing actual imprisonment because it is "necessary to insure fundamental human rights of life and liberty ..."); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) ("Without doubt, [the Fourteenth Amendment] denotes ... freedom from bodily restraint.").

The Court recently reiterated the rationale for providing counsel to those who face imprisonment in *Alabama v. Shelton*, —— U.S. ——, ——, 122 S.Ct. 1764, 1772, 152 L.Ed.2d 888 (2002). Notably, the Court underscored that an important goal of the right to counsel is to ensure that adjudications are sufficiently reliable to permit incarceration, warning that: "a defendant [deprived of trial counsel] faces incarceration on a conviction that has never been subject to 'the crucible of

meaningful adversarial testing.' " *Id.* (quoting *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984)).

The principle underlying the right to counsel applies with equal force where one's liberty is in jeopardy in a civil case. *See In re Gault,* 387 U.S. 1, 36–37, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527 (1967) (finding court-appointed counsel is "essential" in a civil delinquency proceeding "which may result in commitment to an institution in which the juvenile's freedom is curtailed ...."); *Walker v. McLain,* 768 F.2d 1181, 1183 (10th Cir.1985) (holding that because "jail is just as bleak" for the civil litigant, due process requires the right to appointed counsel); *Ridgway v. Baker,* 720 F.2d 1409, 1413 (5th Cir. 1983) ("The right to counsel turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as 'criminal' or 'civil.' "); *McNabb v. Osmundson,* 315 N.W.2d 9, 11 (Iowa 1982) ("The jail doors clang with the same finality behind an indigent who is held in contempt and incarcerated ... as they do behind an indigent who is incarcerated for a violation of a criminal statute."); *State ex rel. Graves v. Daugherty,* 164 W.Va. 726, 266 S.E.2d 142, 144 (1980) ("We eschew the rubric of 'criminal' versus 'civil' in determining what process is fair.").

In *Lassiter v. Dept. of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the United States Supreme Court addressed whether an indigent civil litigant has a due process right to court-appointed counsel where the loss of parental rights was at stake. The Supreme Court made clear that its resolution of the issue did not turn on whether the "proceeding[ ] may be styled 'civil' and not 'criminal.' " *Id.* at 25, 101 S.Ct. at 2159. Rather, it noted that "it is a litigant's interest in personal freedom and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, [that] triggers the right to appointed counsel...." *Id.* The Court cited its earlier decision, *In re Gault,* 387 U.S. at 36–37, 87 S.Ct. at 1448, as authority for the conclusion reached, noting that "[t]he pre-eminent generalization that emerges from [the United States Supreme] Court's precedents

on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter,* 452 U.S. at 25, 101 S.Ct. at 2158.

*In re Gault* established the core principle of the *Lassiter* holding. In that case, court-appointed counsel was found to be "essential" in a civil delinquency proceeding because it "[carried] with it the awesome prospect of incarceration in a state institution." 387 U.S. at 36–37, 87 S.Ct. at 1448. The proceeding's technical classification as "non-criminal" was of no consequence. *Id.* at 27, 87 S.Ct. at 1443. Thus, the right to counsel is triggered by a litigant's risk of actual incarceration.

Moreover, although a civil litigant facing actual imprisonment is not entitled to the full panoply of due process rights,[8] he is entitled to counsel. The right to counsel is recognized as unique among the panoply of due process rights. *See Bowerman v. MacDonald,* 431 Mich. 1, 427 N.W.2d 477, 482 (1988) (noting that the right to counsel is a "particular and clearly demarcated right" separate from the full panoply of due process rights); *Custis v. United States,* 511 U.S. 485, 496, 114 S.Ct. 1732, 1738, 128 L.Ed.2d 517 (1994) ("[F]ailure to appoint counsel for an indigent defendant [is] a unique constitutional defect." (citing *United States v. Tucker,* 404 U.S. 443, 92 S.Ct.

---

**8.** In *Hicks v. Feiock,* 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988), the United States Supreme Court held that the Due Process Clause does not protect civil contemnors from a burden-shifting rule. Likewise, in *United Mine Workers v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), the Court held that due process does not entitle a civil contemnor to a trial by jury. However, the right to counsel was not at issue in *Hicks* or *Bagwell.* Therefore, neither case affects our decision on the issue before us. *See Mead v. Batchlor,* 435 Mich. 480, 460 N.W.2d 493, 499 n. 13 (1990) (holding that *Hicks* does not provide support for the proposition that the right to counsel depends on the nature of the proceeding); *Sanders v. Shephard,* 185 Ill.App.3d 719, 133 Ill.Dec. 712, 541 N.E.2d 1150, 1156–59 (1989) (applying *Hicks* and holding that due process did not protect civil contemnor from burden-shifting rule or double jeopardy violations, but that due process entitled the civil contemnor to counsel based on *Lassiter* and "virtually every decision" considering the issue).

589, 30 L.Ed.2d 592 (1972); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938))).

> [T]here is a historical basis ... for treating the right to have counsel appointed as unique, perhaps because of [the United States Supreme Court's] oftstated view that "the right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel."

*Custis,* 511 U.S. at 494–95, 114 S.Ct. at 1738 (quoting *Powell,* 287 U.S. at 68–69, 53 S.Ct. at 64). As noted in *Walker v. McLain,* the guiding hand of counsel is essential to ensure that a civil litigant is not wrongfully imprisoned based on an erroneous finding of contempt:

> [i]f petitioner is truly indigent, his liberty interest is no more conditional than if he were serving a criminal sentence; he does not have the keys to the prison door if he cannot afford the price. The fact that he should not have been jailed if he is truly indigent only highlights the need for counsel, for the assistance of a lawyer would have greatly aided him in establishing his indigency and ensuring that he was not improperly incarcerated.

768 F.2d at 1184; *accord Mead v. Batchlor,* 435 Mich. 480, 460 N.W.2d 493, 499 (1990).[9]

Consequently, the right to counsel may apply in situations where other due process rights do not. For example, the Court held in *Custis* that a defendant may collaterally attack a sentence enhanced by a prior hearing where the right to counsel was violated at that hearing, but he cannot do so where other due process rights are at issue. *Id.* In short, because the right to counsel is a unique constitutional right, which is "necessary to insure fundamental human rights of life

---

9. The majority's suggestion that a civil contemnor can easily avoid incarceration assumes the litigant's willful contumacy and the fairness of the underlying process to determine that contumacy. A purge clause only assists the civil contemnor if he has the ability to comply *and* the underlying order was properly determined. In other words, the unassisted civil contemnor risks an improper or unfair finding of contempt, and therefore wrongful incarceration.

and liberty," *Powell,* 287 U.S. at 68–69, 53 S.Ct. at 64, especially "where one's liberty is in jeopardy," *Scott,* 440 U.S. at 370, 99 S.Ct. at 1160, the due process right to counsel applies to all litigants facing actual imprisonment.

Indeed, in *Shelton,* the United States Supreme Court held "that a suspended sentence that may end up in the actual deprivation of a person's liberty may not be imposed unless the defendant was accorded the guiding hand of counsel in the prosecution for the crime charged." —— U.S. at ——, 122 S.Ct. at 1767. Significantly, the court observed as follows:

"[Our] ... decisions have reiterated the *Argersinger–Scott* actual imprisonment standard. *See, e.g., Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001) (any amount of actual jail time has Sixth Amendment significance); *M.L.B. v. S.L.J.,* 519 U.S. 102, 113, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996); *Nichols v. United States,* 511 U.S. 738, 746, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994) (constitutional line is between criminal proceedings that resulted in imprisonment, and those that did not); *id.*[ ] at 750, 114 S.Ct. at 1929 (Souter, J., concurring in judgment) (The Court in *Scott,* relying on *Argersinger* [,] drew a bright line between imprisonment and lesser criminal penalties.); *Lassiter v. Department of Social Servs. of Durham Cty.,* 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). It is thus the controlling rule that absent a knowing and intelligent waiver, no person may be imprisoned for any offense unless he was represented by counsel at his trial. *Argersinger,* 407 U.S.[ ] at 37[, 92 S.Ct. at 2012]."

*Shelton,* —— U.S. at ——, 122 S.Ct. at 1769.

The reference to *Lassiter* in this context was not a careless aside, and it supports the central thesis of this dissent—that an indigent person has a right to counsel in any proceeding, criminal or civil, when that person faces a deprivation of physical liberty.

Nearly all state and federal courts addressing the right to counsel in a civil case have adopted the reasoning of the

United States Supreme Court in *Lassiter* and *In re Gault*, and have concluded that an indigent's due process right to appointed counsel is catalyzed by the fundamental interest in physical liberty, and not by the civil or criminal nature of the proceeding. The seven federal circuit courts considering the issue have unanimously concluded that due process requires the appointment of counsel for indigent civil contemnors facing actual imprisonment. *See Walker*, 768 F.2d at 1183; *Sevier v. Turner*, 742 F.2d 262, 267 (6th Cir.1984); *Ridgway*, 720 F.2d at 1413; *United States v. Bobart Travel Agency*, 699 F.2d 618, 620 (2d Cir.1982); *United States v. Anderson*, 553 F.2d 1154, 1155–56 (8th Cir.1977) (*per curiam* ); *In re Kilgo*, 484 F.2d 1215, 1221 (4th Cir.1973); *In re Grand Jury Proceedings; United States v. Sun Kung Kang*, 468 F.2d 1368 (9th Cir. 1972); *see also Mastin v. Fellerhoff*, 526 F.Supp. 969, 972–73 (S.D.Ohio 1981); *Young v. Whitworth*, 522 F.Supp. 759, 763–65 (S.D.Ohio 1981). The majority of state courts considering the question have likewise followed the *Lassiter* rationale and have held that when an indigent civil litigant faces a deprivation of physical liberty, the right to appointed counsel at trial and appeals of right is absolute unless waived. *See Wisconsin v. Pultz*, 206 Wis.2d 112, 556 N.W.2d 708, 713 (1996) (noting that *Lassiter* held that an indigent litigant has a right to appointed counsel when a loss on the merits would deprive the litigant of personal liberty); *McBride*, 431 S.E.2d at 17 (same); *North Dakota v. Gruchalla*, 467 N.W.2d 451, 453 (N.D.1991) (noting that *Lassiter* recognized "that indigent defendants have a right to have counsel appointed at government expense when their physical liberty is in jeopardy"); *see also Black v. Division of Child Support Enforcement*, 686 A.2d 164, 167 (Del.1996); *Allen v. Casady*, 245 Neb. 149, 511 N.W.2d 125, 127 (1994); *Emerick v. Emerick*, 28 Conn.App. 794, 613 A.2d 1351, 1353 (1992); *Mead*, 460 N.W.2d at 499; *State v. Broussard*, 490 So.2d 273 (La.1986); *Cox v. Slama*, 355 N.W.2d 401 (Minn.1984); *Rutherford v. Rutherford*, 296 Md. 347, 464 A.2d 228 (1983); *McNabb*, 315 N.W.2d at 14; *Salas v. Castellanos*, 24 Cal.3d 22, 154 Cal.Rptr. 529, 593 P.2d 226, 230, 234 (1979); *Colorado v. Lucero*, 196 Colo. 276, 584

P.2d 1208 (1978); *Tetro v. Tetro,* 86 Wash.2d 252, 544 P.2d 17, 19 (1975); *Smoot v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468, 471 (1977); *Otton v. Zaborac,* 525 P.2d 537 (Alaska 1974); *Ex Parte Goodman,* 742 S.W.2d 536, 539 (Tex.App.1987) ("It is settled law in [Texas] that when an indigent is charged with [civil or criminal] contempt, is not represented by counsel and has not intelligently waived the right to assistance of counsel, a court may not, without violating the constitutional right to assistance of counsel, impose imprisonment...."); *In re Marriage of Stariha,* 509 N.E.2d 1117, 1121 (Ind.Ct.App.1987); *Bradford v. Bradford,* 1986 WL 2874, \*4–\*5, 1986 Tenn.App. Lexis 3556, \*9–13; *Johnson v. Johnson,* 11 Kan.App.2d 317, 721 P.2d 290, 294 (1986); *Commonwealth ex rel Brown v. Hendrick,* 220 Pa.Super. 225, 283 A.2d 722, 723–24 (1971). A review of these cases makes clear that the majority's characterization of the proceeding as "civil" and its emphasis on the remedial nature of civil contempt penalties are not determinative of the core question before us.

Rejecting the holdings and reasoning of the United States Supreme Court in *In re Gault* and *Lassiter,* and their progeny, the majority invokes a balancing test to determine whether an alleged contemnor facing actual imprisonment has a right to counsel, and concludes that no right exists. In adopting this test, the majority misconstrues the holding in *Lassiter* and its progeny. To be sure, *Lassiter* used a *Mathews* balancing test to resolve the issue before it.[10] However, the Court in *Lassiter* posited the test to govern cases in which the petitioning civil litigant did not risk incarceration as a result of losing the litigation at issue. *See Lassiter,* 452 U.S. at 27, 101

---

**10.** The balancing test employed in *Lassiter* is derived from the holding in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Mathews,* the United States Supreme Court articulated a three-factor test for determining what process is due. 424 U.S. at 334–35, 96 S.Ct. at 902–03. Courts must consider "the private interest that will be affected by the official action; ... the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest...." *Id.* Although the majority identifies these factors, it does not weigh or consider them.

S.Ct. at 2159–60 (holding that where a civil litigant does not risk a deprivation of liberty, a balancing test must be applied to rebut the presumption that such a litigant does not have a right to counsel). Faced with a litigant whose parental rights, not her interest in liberty, were at stake, the *Lassiter* Court adopted a balancing test to guide the court's resolution of the issue. Its applicability, it must be underscored, is limited to those cases where an indigent civil litigant's fundamental liberty interest is not at risk in the subject litigation. *See id.* at 26–27, 101 S.Ct. at 2159–60 (concluding that parent's right to counsel should be decided on case-by-case basis because parental termination proceedings do not involve the loss of liberty); *In re Gault,* 387 U.S. at 36–37, 87 S.Ct. at 1448 (concluding, without a balancing test, that a juvenile has a right to counsel in a civil delinquency proceeding "carrying with it the awesome prospect of incarceration . . ."); *McBride,* 431 S.E.2d at 17 (observing that the Court in *Lassiter* considered the *Mathews* factors "[b]ecause there was no potential deprivation of physical liberty in the proceeding at issue . . ."); *In re Marriage of Stariha,* 509 N.E.2d at 1121 (noting that *Lassiter* does not require the court to address the *Mathews* factors where the litigant risks the loss of physical liberty); *Tetro,* 544 P.2d at 19 (holding that where liberty is not at issue, the right to counsel turns on the nature of the proceeding and the issues involved, but where a litigant faces imprisonment, counsel is required); *County of Santa Clara v. Rodriguez,* 2 Cal.App.4th 1686, 1694, 5 Cal.Rptr.2d 7 (1992) ("In *Lassiter* . . . the United States Supreme Court made clear that complexity, as a determinant of what due process requires, will come into play only in a situation in which there is no risk the [litigant] will lose his or her personal freedom. Where personal freedom is at stake, a due process basis for appointment of counsel is established without consideration of other possible determinants."); *Bradford,* 1986 WL 2874, *4, 1986 Tenn.App. Lexis 3556, *11 ("When there is the actual possibility of incarceration . . . the court need not evaluate claims on a case by case basis."); *see also Morrissey v. Brewer,* 408 U.S. 471, 480, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d

484 (1972) (holding that a parolee, having been convicted of a crime, has a limited liberty interest and, thus, the parolee's right to the assistance of counsel in parole revocation hearings is determined on a case-by-case basis); *Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 1763–64, 36 L.Ed.2d 656 (1973) (holding that a felony probationer facing a probation revocation hearing does not enjoy the unqualified liberty interest that other litigants enjoy and, applying a balancing test, found no right to court-appointed counsel).

The majority's conclusion that a balancing test is appropriate in the present case is unsupported by current case law. Indeed, none of the foregoing federal circuit courts employed a balancing test to determine whether the civil contemnor was entitled to court-appointed counsel; rather, they followed the *Lassiter* rationale and established the right to counsel for an indigent civil litigant on the sole ground that the civil litigant's fundamental liberty interest was at stake in contempt proceedings. Of the twenty-three state courts that have addressed the issue and held that a due process right to appointed counsel exists, two have concluded that the trial court should apply a balancing test to determine the right on a case-by-case basis. *New Mexico v. Rael,* 97 N.M. 640, 642 P.2d 1099, 1103 (1982); *Duval v. Duval,* 114 N.H. 422, 322 A.2d 1, 4 (1974).

Only the state of Florida has declined to adopt the Supreme Court's rationale in *Gideon, In re Gault,* and *Lassiter,* and concluded that civil contemnors facing imprisonment do not have a due process right to counsel. *See Andrews v. Walton,* 428 So.2d 663, 665–66 (Fla.1983); *see also In re Marriage of Betts,* 200 Ill.App.3d 26, 146 Ill.Dec. 441, 558 N.E.2d 404, 421–24 (1990). *But see Sanders v. Shephard,* 185 Ill.App.3d 719, 133 Ill.Dec. 712, 541 N.E.2d 1150 (1989) (holding that an alleged civil contemnor has an absolute due process right to counsel). Additionally, before the Supreme Court decided *Lassiter,* two state courts held that a civil contemnor does not have a due process right to counsel. *See Meyer v. Meyer,* 414 A.2d 236, 239 (Me.1980); *In re Calhoun,* 47 Ohio St.2d 15, 350 N.E.2d 665, 667 (1976). *But see Simpson v. Francis,* 1990 WL 119250, *4, 1990 Ohio App. Lexis 3412, *10 (holding that

*Calhoun* has been overruled by *Lassiter* and finding that petitioner, an alleged civil contemnor, has a due process right to appointed counsel). It is within this three-state minority that the majority opinion places indigent civil litigants in Virginia courts who risk incarceration if they lose the litigation. I cannot join in this holding.

Krieger, as an alleged civil contemnor, begins the show cause proceeding with a fully intact liberty interest, which is put at risk by that proceeding. Like the petitioner in *In re Gault* facing a civil delinquency proceeding, he enters the courthouse with an unqualified liberty interest that he "may lose ... if he loses the litigation." *Lassiter*, 452 U.S. at 25, 101 S.Ct. at 2158; *In re Gault*, 387 U.S. at 27, 87 S.Ct. at 1443. "The grim reality of [his] threatened jail sentence overshadows the technical distinctions between 'criminal,' 'quasi-criminal,' and 'civil' violations and demands that the protection of legal advice and advocacy be given...." *Tetro*, 544 P.2d at 19.

Thus, applying the reasoning of *In re Gault, Lassiter*, and their progeny, I find that neither the majority's characterization of the proceeding as civil nor its focus on the remedial nature of the penalty squarely addresses the issue before us. Rather, I would rule that Krieger is entitled to court-appointed counsel because his liberty interest was not only put at risk, but was, in fact, lost. *See Lassiter*, 452 U.S. at 26–27, 101 S.Ct. at 2159–60. Specifically, I would hold a civil contemnor facing actual incarceration has a right to appointed counsel at trial unless waived.[11]

It follows that such a litigant is entitled to counsel on appeal. *See M.L.B.*, 519 U.S. at 110, 117 S.Ct. at 560–61 ("Although the Federal Constitution guarantees no right to appellate review, once a State affords that right, *Griffin* held

---

11. Manifestly, court-appointed counsel is not required in every show cause hearing. In cases where the trial court forecloses imprisonment as a punishment, the right to counsel is not absolute. *See Sevier*, 742 F.2d at 267 (noting that *Lassiter* indicated the relevant question in determining the right to counsel is whether the court elects to incarcerate).

that the State may not bolt the door to equal justice." (internal quotation omitted)); *Cabaniss,* 206 Va. at 333, 143 S.E.2d at 913 ("[F]ailure to appoint counsel to assist an indigent defendant in making an appeal from a conviction is a denial of equal protection and due process guaranteed to him under the Federal Constitution and the Virginia Bill of Rights." (citations omitted)). Therefore, I would hold that the trial court erred in denying appellant's request for assistance of counsel on appeal.

### B. Alleged Civil Contemnor's Entitlement to Transcripts

I would also hold that, to the extent transcripts of the proceedings below are available, Krieger is entitled to copies at the Commonwealth's expense. It is "fundamental that, once established, [avenues of appellate review] must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Williams v. Oklahoma City,* 395 U.S. 458, 459, 89 S.Ct. 1818, 1819, 23 L.Ed.2d 440 (1969) (citations omitted). Consequently, where a transcript is available for a fee, the Fourteenth Amendment requires states to furnish a copy, at state expense, to indigent criminal defendants. *Griffin,* 351 U.S. at 18, 76 S.Ct. at 590.

The Supreme Court has also recognized a narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees, such as transcript preparation fees. *M.L.B.,* 519 U.S. at 113, 117 S.Ct. at 562; *Little v. Streater,* 452 U.S. 1, 13–17, 101 S.Ct. 2202, 2209–11, 68 L.Ed.2d 627 (1981) (finding that state must pay for blood grouping tests sought by indigent defendant contesting a paternity suit); *Boddie v. Connecticut,* 401 U.S. 371, 374, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1971) (holding that state could not deny a divorce based on couple's inability to pay court costs). In *M.L.B.,* the Supreme Court held that because petitioner's interest in a legal relationship with her child outweighed that state's financial interest in collecting the fee, the state could not require her to pay trial record preparation fees on appeal. 519 U.S. at 121–22, 117 S.Ct. at 566. The Court noted that, to determine whether

an appeal fits within this narrow category, we must "inspect the character and intensity of the individual interest at stake . . . and the State's justification for its exaction." *Id.* at 120–21, 117 S.Ct. at 566.

Krieger, "[l]ike a defendant resisting criminal conviction, . . . seeks to be spared from the State's devastatingly adverse action." *M.L.B.*, 519 U.S. at 125, 117 S.Ct. at 568. The individual interest at stake is the fundamental right to personal liberty. *See Butts*, 145 Va. at 806, 133 S.E. at 766 (noting that personal liberty is a fundamental right); *Commonwealth v. Johnson*, 7 Va.App. 614, 622, 376 S.E.2d 787, 791 (1989) (same). As noted earlier, the threat of deprivation of that right is equally present where the litigant faces imprisonment under the label of a civil trial.

Krieger's interest in his personal liberty is at least as significant as M.L.B.'s right to a relationship with her child. Therefore, I would conclude that Krieger, an indigent, has a right, at state expense, to a copy of any available transcripts of the relevant proceedings. *See Draper v. Washington*, 372 U.S. 487, 497, 83 S.Ct. 774, 780, 9 L.Ed.2d 899 (1963).

For the foregoing reasons, I would reverse the decision of the trial court.